LAW OFFICE OF RHONDA HARRIS BUCKNER
RHONDA HARRIS BUCKNER SBN 165830
34145 Pacific Coast Highway, #314
Dana Point, California 92629
Telephone: (949) 218-3253
Facsimile: (949) 218-3254
Email: rhonda@harrisbucknerlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. PHILP, MATTHEW D. PHILP, MICHAEL J. PHILP, all individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY; AHMC HEALTHCARE, INC.; AHMC HEALTHCARE, INC. WELFARE BENEFIT PLAN,<br><br>Defendants. | Case No. 5:18-cv-419<br><br>**COMPLAINT FOR RELIEF UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 FOR RECOVERY OF PLAN BENEFITS** |

Plaintiffs JOHN R. PHILP, MATTHEW D. PHILP, MICHAEL J. PHILP ("Plaintiffs") file this Original Complaint asserting causes of action at law and, alternatively, in equity, for relief against Reliance Standard Life Insurance Company, AHMC Healthcare, Inc. and the AHMC Healthcare, Inc. Welfare Benefit Plan, Defendants:

## PRELIMINARY ALLEGATIONS

1. "Jurisdiction" – This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiffs for employee benefits

under employee benefit plans regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan, or in the alternative, equitable relief, all under 29 U.S.C. § 1132(a). Plaintiffs also seek attorneys' fees and costs.

2. Plaintiffs are informed and believe that AHMC Healthcare, Inc. ("AHMC") is a corporation with its principal place of business in the County of Los Angeles, in the State of California, authorized to transact and transacting business in the Central District of California and can be found in the Central District of California. AHMC was responsible, in whole or part, for enrollment, and other administration of Defendant AHMC's Group Life Insurance Plan and Group Accident Plan (hereinafter "the Welfare Plan") for employees of AHMC. Plaintiffs are further informed and believe that AHMC is named as, or was acting in the capacities of plan sponsor and/or plan administrator for the Welfare Plan.

3. Plaintiffs are informed and believe that defendant, Reliance Standard Life Insurance Company (hereinafter "Reliance Standard"), is a corporation with its principal place of business in the State of Pennsylvania, authorized to transact and transacting business in the Central District of California and can be found in the Central District of California. Reliance Standard is the insurer of benefits under the Welfare Plan. Plaintiffs are further informed and believe that Reliance Standard was responsible, in whole or part, for enrollment, and other administration of the Welfare Plan, and acted in the capacity of a plan administrator of the Welfare Plan.

4. Plaintiffs are informed and believe that defendant the Welfare Plan is an employee welfare benefit plan regulated by ERISA, established by AHMC, under which Glory Philp was a participant, and pursuant to which plaintiffs are entitled to Life Insurance and Accident Insurance benefit proceeds as the named

primary beneficiaries under the Welfare Plan. The Welfare Plan is doing business in the Central District of California, in that it covers employees residing in this judicial district.

5. Defendants can be found in this judicial district and the Welfare Plan is administered in this judicial district. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

6. Plaintiff JOHN R. PHILP is the husband of Glory Philp, the deceased insured. Glory Philp was employed at AHMC's Whittier location and was enrolled and eligible for benefits under the Plan. Plaintiff JOHN R. PHILP is, and at all times herein mentioned was, a resident and citizen of San Bernardino County in the State of California.

7. Plaintiff MATTHEW D. PHILP, the adult son of Glory Philp is, and at all times herein mentioned was, a resident and citizen of San Bernardino County in the State of California.

8. Plaintiff MICHAEL J. PHILP, the adult son of Glory Philp is currently a resident of Oregon, but at all relevant times and at the time of the denial of benefits, was a resident and citizen of San Bernardino County in the State of California.

9. At all relevant times, the Welfare Plan was a group benefit plan that provided Plaintiffs with life insurance and accidental death insurance protection in the event Glory Philp died.

10. The Welfare Plan that is the subject of this action is and was an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) sponsored by and established by AHMC for the purpose of providing peace of mind and security to its participants in the event that, among other things, a participant or beneficiary of the Plan should suffer a compensable loss under the coverage issued by Defendant.

///

## FACTUAL BACKGROUND

11.  Glory Philp began her employment with AHMC (or its predecessor) in 1986 as a registered nurse. From the inception of her employment, Mrs. Philp enrolled in various benefit programs offered by her employer, including medical, dental, vision, disability, basic and supplemental life, and basic and supplemental accidental death insurance policies. When given the option, Mrs. Philp always choose to purchase supplemental life and accidental death coverage. This was true even before Mrs. Philp was diagnosed with breast cancer in 2001.

12.  For full-time employees, Basic Life and Basic Accidental Death of 1x annual pay, up to a maximum of $50,000 under each policy were provided to employees at no cost to the employee.

13.  At all relevant times, both full-time and part-time employees could elect to purchase supplemental life coverage. As late as 2005 and through her death in October 2015, Mrs. Philp choose to purchase supplemental life coverage in the amount of $230,000. At all relevant times and in 2014 and 2015 the supplemental life coverage was provided through Group Life Policy Number GL147682 issued by Reliance Standard.

14.  At all relevant times, both full-time and part-time employees could elect to purchase supplemental accidental death coverage. As late as 2005 and through 2008, Mrs. Philp purchased supplemental accidental death coverage in the amount of $230,000. For years 2009 though her death in October 2015, she increased her supplemental accidental death coverage to $390,000. At all relevant times and in 2014 and 2015 the supplemental accidental death coverage was provided through Group Accident Policy Number VAR205019 issued by Reliance Standard.

15.  At all relevant times, Mrs. Philp listed plaintiffs (her husband and sons) as the beneficiaries under her life and accidental death insurance policies.

16.  Prior to Mrs. Philp suffering a reoccurrence of her cancer in the

Spring of 2014, Mrs. Philp worked at least 36 hours per week and often more. After her cancer reoccurrence, she was forced to use sick leave and time-away pay.

17. On or about October 7, 2014, Mrs. Philp took a medical leave of absence. Mrs. Philp applied for and was paid disability benefits under her group disability policy issued by Colonial Life through AHMC's Welfare Benefit Plan.

18. The correct amount of premium payments for both the supplemental life and accidental death insurance policies were deducted from her paycheck from the inception of her employment until she went out on disability in October 2014.

19. Given Mrs. Philp had cancer and was taking a medical leave of absence, Mrs. Philp and her husband inquired of AHMC what needed to be done to keep all their insurance coverages, including medical, life insurance and accidental death coverage, in effect. Mrs. Philp was told she only needed to pay COBRA premiums for all her insurance coverages to remain in effect. Mrs. Philp timely paid the COBRA premiums.

20. Neither Mrs. Philp nor plaintiffs were informed that AHMC would stop paying premiums for her life insurance and accidental death insurance coverages. No notice was given to Mrs. Philp or plaintiffs that AHMC was going to cease making premium payments on her group life and accidental death policies on or about October 18, 2014 nor was any warning given that that was the last payment it was going to make. Neither Mrs. Philp nor plaintiffs were given notice by Reliance Standard that premium payments were not made or were due or past due.

21. Neither Mrs. Philp nor plaintiffs were offered any other means of continuing Mrs. Philp's life insurance or accidental death coverage following Mrs. Philp taking a medical leave of absence in October 2014.

22. Group Life Policy Number GL147682 contained several means of

continuing insurance coverage following the end of an insured's employment. Group Life Policy Number GL147682 states the insurance of an insured may be continued, by payment of premium, beyond the date the Insured ceases to be eligible for this insurance, but not longer than twelve (12) months, if due to illness or injury or an approved leave of absence.

23. One means of continuing Supplemental Life insurance coverage under Group Life Policy Number GL147682 is through the Optional "Portability" provision which permits the Porting of the Supplemental Life insurance coverage upon a written request during a specific period of time. Porting was permitted if, among other things, coverage would otherwise terminate because the insured ceases to be eligible for coverage for reasons other than retirement. Porting continued the Supplemental Life insurance coverage in the event the insured was not approved for extension of coverage under the Waiver of Premium in Event of Total Disability provision. Waiver of Premium coverage only applies if the insured becomes disabled prior to age 60 and Mrs. Philp was 62 when she became disabled. Thus, Portability was an option that would allow Mrs. Philp to keep her Supplemental Life coverage in effect. The Premium cost for the Ported coverage would be the insured's responsibility. Plaintiffs allege upon information and belief that notice of the option to Port was to be given by the Plan, AHMC or Reliance Standard or either of them. Neither the Plan, AHMC or Reliance Standard gave Mrs. Philp notice of her portability option.

24. A second way an insured could continue her Basic and Supplemental life insurance coverage under Group Life Policy Number GL147682 was to exercise the option to convert her life insurance coverage to an individual policy. The option to convert is available when various events occur including when insurance ceases due to termination of membership in any of the Participating Unit's classes. An application was required within 31 days after the date the insurance ceases. As with the Portability option, premium payments for the

converted overage become the responsibility of the insured. As important, neither Porting coverage or converting coverage required evidence of insurability.

25. A third option available to an insured under Group Life Policy Number GL147682 is the Accelerated Benefit Option. If the insured is terminally ill and, among other things, provides evidence of the terminal nature of her condition, she could request payment of a significant portion of her life insurance before death.

26. Similarly, Group Accident Policy Number VAR205019 also contains a Conversion Privilege provision. An insured can use this privilege to convert the group policy to an individual policy provided an application is submitted with 31 days after coverage ends. The insured will be responsible for premium payments and proof of good health is not required.

27. There was no notice given to Mrs. Philp by AHMC or Reliance Standard of her right to port her supplemental life coverage or of the conversion options under both policies.

28. When Mrs. Philp went on disability, Mrs. Philp was told she only needed to paid COBRA premiums for all her insurance coverages to remain in effect. There was no mention of the policy options for keeping and retaining life insurance coverage during her disability. No form for conversion, porting or otherwise to continue coverage was mentioned. In fact, Mrs. Philp and her husband were advised that all of Mrs. Philp's insurance coverages would remain in effect while she was on disability if she paid COBRA premiums, which she did pay.

29. On or about July 10, 2015, Mrs. Philp returned from her medical leave of absence. Initially she returned on a part-time basis because she had education and orientation to complete. However, for the pay period ending August 22, 2015 to the date of her death, her earnings statements show she worked a minimum of 32 hours per week and sometimes up to 48 hours per week. Copies of Mrs.

1 Philp's Earnings Statements for July 2015 to October 2015 are attached
2 collectively as Exhibit A.

3     30. Mrs. Philp returned from her medical leave of absence on or about
4 July 10, 2015. Plaintiffs are informed and believe that AHMC informed Mrs.
5 Philp she should update her 2015 benefits selections by submitting a 2015
6 Benefits Enrollment form. As she did for every past year dating back to at least
7 year 2005, Mrs. Philp choose *supplemental* life insurance for $230,000 for
8 herself. The form indicates that up to $50,000 in basic life was provided to her at
9 no cost. As she had in years past, Mrs. Philp also choose $390,000 in
10 supplemental accidental death coverage. The form indicates that up to $50,000 in
11 basic accidental death coverage was provided to her at no cost. A copy of Mrs.
12 Philp's 2015 enrollment form is attached as Exhibit B.

13     31. Mrs. Philp had not been required to submit any proof of good health
14 when updating her benefits selections in the past. In 2015, when submitting her
15 2015 benefit enrollment form, neither AHMC nor Reliance Standard informed
16 Mrs. Philp that she need to submit any other paperwork or proof of good health.

17     32. Neither Reliance Standard, AHMC nor the Welfare Plan ever asked
18 for any additional information regarding the coverage on Mrs. Philp. Defendants
19 failed at any time prior to the loss to communicate to Mrs. Philp or Plaintiffs that
20 Basic Life, Supplemental Life, Basic Accidental Death or Supplemental
21 Accidental Death coverages had not been issued, that an additional form or
22 application would need to be completed, or that any further documentation would
23 be required.

24     33. Prior to Mrs. Philp's death, neither Mrs. Philp nor Plaintiffs ever
25 received a copy of the policy, certificate of coverage, or summary plan
26 description.

27     34. Mrs. Philp was informed that her group life and accidental death
28 policies were in place. A copy of the Summary of Coverage provided to Mrs.

law office rhonda harris buckner
34145 pacific coast highway, #314
dana point california 92629
tel 949.218.3253
fax 949.218.3254

1   Philp is attached as Exhibit C. These forms show Mrs. Philp's Supplemental Life
2   insurance coverage was $230,000 and her Accidental Death coverage was
3   $390,000 - - the same coverage she had prior to going out on disability.

4       35.   For the pay period ending October 3, 2015, premiums were deducted
5   out of Mrs. Philp's paycheck for, amongst other things, both Supplemental Life
6   and Accidental Death coverages.

7       36.   For the pay period ending October 17, 2015, premiums were deducted
8   out of Mrs. Philp's paycheck for, amongst other things, both Supplemental Life
9   and Accidental Death coverages.

10      37.   For the pay period ending October 31, 2015, premiums were deducted
11  out of Mrs. Philp's paycheck for, amongst other things, both Supplemental Life
12  and Accidental Death coverages.

13      38.   On October 23, 2015 Mrs. Philp was hospitalized due to nausea and
14  vomiting. On October 24, 2015 Mrs. Philp died due to accidentally aspirating
15  vomit. The San Bernardino County Coroner listed the immediate cause of death
16  as "aspiration of gastric contents."

17      39.   A Proof of Loss Claim Statement for Group Life/Accidental Death
18  Insurance form was submitted to Reliance Standard and signed on behalf of
19  AHMC as Employer/Administrator by Martha Salcedo. A copy of this form is
20  attached as Exhibit D. Under the Employer/Administrator Information section,
21  the form notes insurance was in effect on the date of loss. The form also notes that
22  Mrs. Philp was a full-time employee and that premiums were paid through Mrs.
23  Philp date of death – October 24, 2015.

24      40.   Under the Attending Physicians Statement section of the form, Mrs.
25  Philp's physician notes that the Principal Cause of death was aspiration of gastric
26  contents, with a date of onset of "minutes." The form notes "Pulm Edema; Met
27  Breast Ca" under the "contributing cause" section, with a date of onset of
28  approximately 2001.

law office rhonda harris buckner
34145 pacific coast highway, #314
dana point california 92629
tel 949.218.3253
fax 949.218.3254

41. On March 28, 2016, Martha Salcedo from AHMC sent an email to Denise Keys from Reliance Standard stating "Denise, employee returned to work on 7/11/15 and then reinstated her benefits and was paying for all of her benefits when she returned to work. I spoke to spouse today and he mentioned that he was approved for the $230,000 and also requesting a copy of the policy." A copy of this email is attached as Exhibit E.

42. Exhibit E also shows that on March 29, 2016, Denise Keys from Reliance Standard sent an email to Martha Salcedo of AHMC stating:

> "Good Afternoon, After final review of the claim submitted on Glory Philp, no benefits are payable. Below are the basic reasoning behind each denial. A letter will be going out tomorrow outlining the denials.
> Basic Life – PT employees are not eligible
> Basic AD&D – PT employees are not eligible and death was not an accident
> Supplemental Life – Coverage terminated when premiums stopped being paid in 10/14. Employee should have been offered conversion. When she returned in July 2015, she had no coverage. She would have had to elect coverage again, and it would have all been subject to evidence of insurability.
> Voluntary AD&D – Coverage terminated when premiums stopped being paid in 10/14. Coverage would have had to be elected again upon return to work in July. Also, death was not due to an accident.
> Please let me know if you have any further questions or concerns."

43. Exhibit E also shows that on March 29, 2016, Diane Salazar of AHMC sent an email to Martha Salazar of AHMC stating:

> "Good Afternoon Martha, Unfortunately the information below from Denise is accurate. I show that Glory went out on a LOA on 10/07/2014 and returned on 07/11/20-15. Life insurance benefits are

not allowed through Cobra.  An employee needs to be given both Colonial and Reliance self-payment when they go out on a LOA. Reliance allows a six (6) month individual reinstatement with no EOI required upon return, however, Glory was out for eight (8) months with no payments.  She did elect the Life Insurance upon return, but this required an EOI to be sent to Reliance for review and approval. Thanks, Diane"

44. Reliance Standard denied plaintiffs' claim in a letter dated March 31, 2016.

45. Plaintiffs timely appealed Reliance Standard's denial in a letter dated May 16, 2016.

46. In a letter dated August 17, 2016, Reliance Standard denied plaintiffs' appeal.

47. Having exhausted their administrative remedies, plaintiffs now bring this action for equitable relief.

### FIRST CAUSE OF ACTION
### FOR BREACH OF PLAN AND RECOVERY OF PLAN BENEFITS
### (Against Reliance Standard and the Welfare Plan)

48. The allegations contained in all previous paragraphs are incorporated herein by reference as though set forth in full.

49. The denial of plaintiffs' claim for life insurance and accidental death benefits was improper, in that Mrs. Philp, at all relevant times, personally paid all premiums due for the Supplemental Life and Supplemental Accidental Death coverages under the Plan and satisfied the requirements to receive the disputed life insurance and accidental death benefits.  At all relevant times, Mrs. Philp received a paycheck that showed a deduction for the life and accidental death insurance coverage. Moreover, the group plan, by its terms, barred defendants

1  from denying an obligation to pay the benefits.

2      50. Defendant AHMC Plan failed in its obligations to take the necessary steps to either ensure that Mrs. Philp complied with required documentation, or at a minimum, not deduct premiums and advise her she had supplemental life and accidental death coverage. At all relevant times, Mrs. Philp and plaintiffs performed all obligations on their part to be performed.

    51. The Plan was entered into within the jurisdiction of the above-entitled Court.

    52. The Plan calls for performance within the jurisdiction of the above-entitled Court.

    53. The Plan required payment of benefits within the jurisdiction of the above-entitled Court for a total amount to be shown at the time of trial.

    54. As a result of defendants' conduct and failures plaintiffs have been denied the full value of the life insurance and accidental death benefits and have been damaged in the amount of unpaid basic life insurance benefits of $50,000, supplemental life insurance benefits of $230,000, accidental death benefits of $50,000 and supplemental accidental death benefits of $390,000, plus interests, the actual amount of which will be proven at trial.

    55. Plaintiffs are entitled to recover said benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).

    56. As a further direct and proximate result of defendants' conduct, plaintiffs, in pursuing this action, have been required to incur attorneys' fees and costs. Pursuant to 29 U.S.C. § 1132(g)(1), plaintiff is entitled to have such fees and costs paid by defendant(s).

    57. Following the denial of benefits under the Life Insurance and Accidental Death Plan, Plaintiffs have pursued and exhausted all administrative remedies required under ERISA which Defendants denied.

///

law office rhonda harris buckner
34145 pacific coast highway, #314
dana point california 92629
tel 949.218.3253
fax 949.218.3254

**SECOND (ALTERNATIVE) CAUSE OF ACTION**

**CLAIM FOR EQUITABLE RELIEF**

**(Against All Defendants)**

58. Alternatively, plaintiffs bring this claim for equitable relief. Congress designed ERISA to promote the interests of employees and their beneficiaries in employee benefit plans. Plan fiduciaries are obligate to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

59. The ERISA fiduciary duty includes the common law duty of loyalty which requires the fiduciaries to deal fairly and honestly with beneficiaries. It also imposes an affirmative duty on the fiduciaries to convey complete, thorough, and accurate information that is material to a beneficiary's claim and circumstance.

60. The obligation on fiduciaries includes an obligation to reasonably explain to plan participants and beneficiaries the material terms and conditions of the relevant plan documents and provide them with adequate notice of what they need to do in order to continue insurance coverage.

61. Plaintiffs allege upon information and belief that AHMC was the Plan Sponsor and Plan Administrator. Reliance Standard was the Claim Administrator for the Plan. Both were fiduciaries obligated to act in accordance with the terms of the Plan and in a manner consistent with their fiduciary obligation to Glory Philp as a Plan participant and to plaintiffs, as Plan beneficiaries. Glory Philp relied on these defendants to honor her wishes to maintain her life and accidental death insurance coverages, act prudently in doing so, and give her honest and accurate information material to keeping this coverage as she coped with a terminal illness. AHMC and Reliance Standard failed in this regard and breached their fiduciary obligations to Mrs. Philp and plaintiffs. Denial of plaintiffs' life

insurance and accidental death claim was in defiance of her expressed desire and resulted in harm to plaintiffs. Their respective breaches resulted in the loss of the life insurance and accidental death benefits provided under the Plan.

62. At the time Mrs. Philp took a medical leave of absence and filed for disability benefits, she was not informed AHMC would stop making premium payments and was not told there was no automatic waiver of premiums for the life insurance coverage upon her disability because she was older than 60. Neither AHMC nor Reliance Standard informed Mrs. Philp that she would need to pay insurance premiums or that insurance premiums were due or past due.

63. Nor was it explained to Mrs. Philp that she was entitled to the continuation of her life insurance through the Conversion Privilege and Portability provisions and of her accidental death insurance through the Conversion Privilege. Neither AHMC nor Reliance Standard informed Mrs. Philp that she could port or convert her life coverage to keep her insurance in effect. Neither AHMC nor Reliance Standard informed Mrs. Philp that she could convert her accidental death coverage to keep her insurance in effect.

64. No effort was made to provide Mrs. Philp or plaintiffs with a copy of the Plan or Certificate or a Summary Plan Description (SPD) from which she could review her options. More importantly, sick again with cancer and concerned with keeping both her medical and life insurance coverages in effect, she was instructed that she had only to pay COBRA to keep all of her insurance coverage in effect.

65. Upon her return to work in July 2015, she was advised she only needed to fill out the 2015 Benefits Enrollment form. She was not told by any defendant that any other documentation was required. She was provided a Summary of Coverage verifying she had life insurance and accidental death coverages. Not only is the fiduciary obligated to convey accurate material information, it also has an affirmative obligation to correct a participant's

incorrect information or misunderstanding of the terms of the Plan or coverage options.

66. In October 2015 Mrs. Philp aspirated on her gastric contests. Plaintiffs' claim for life and accidental death benefits was denied. No life insurance benefits were paid because of these and other breaches of the fiduciary obligations of Reliance Standard and AHMC.

67. Plaintiffs thus seek appropriate equitable relief from the fiduciary breaches of Reliance Standard and AHMC. This relief includes, but is not limited to (1) an equitable surcharge for unjust enrichment to recover the benefits withheld and to make the ERISA beneficiaries whole, (2) reformation of the Plan to the extend needed to equitably address and pay plaintiffs' claim, (3) waiver or equitable estoppel preventing Reliance Standard and AHMC from relying on the failure to pay premiums as grounds for denying the claim and (4) waiver or equitable estoppel preventing Reliance Standard and AHMC from requiring proof of good health. Plaintiffs seeks any other equitable relief the Court deems necessary and proper to protect them for a loss from such violations, all pursuant to 29 U.S.C. §1132(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray for relief against defendants as follows:

**Under the First Claim for Relief:**

1. Payment of Life Insurance and Accidental Death benefit proceeds due plaintiff in the amount of $720,000 or such other amount as is shown at time of trial;

2. Enforcement of plaintiffs' rights under the terms of the Life Plan;

3. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorney fees incurred in pursuing this action;

law office rhonda harris buckner
34145 pacific coast highway, #314
dana point california 92629
tel 949.218.3253
fax 949.218.3254

4. For payment of prejudgment and post-judgment interest as allowed for under ERISA;

5. For such other and further relief as this Court deems just and proper.

**Under the Second (Alternative) Claim for Relief:**

1. An equitable surcharge for unjust enrichment to recover the benefits withheld and to make the ERISA beneficiaries whole;

2. Reformation of the Plan to the extend needed to equitably address and pay plaintiffs' claim;

3. Waiver or equitable estoppel preventing Reliance Standard and AHMC from relying on the failure to pay premiums as grounds for denying the claim;

4. Waiver or equitable estoppel preventing Reliance Standard and AHMC from requiring proof of good health;

5. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorney fees incurred in pursuing this action;

6. For payment of prejudgment and post-judgment interest as allowed for under ERISA;

7. For such other and further relief as this Court deems just and proper.

Dated: February 28, 2018     LAW OFFICE OF RHONDA HARRIS BUCKNER

By: /s/ Rhonda Harris Buckner, Esq.
Rhonda Harris Buckner, Esq.
Attorney for Plaintiffs,
John R. Philp, et. al.